## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DORY A. MARTIN,                          :
                                         :
                    Plaintiff            :
        v.                               :
                                         :
BOROUGH OF STEELTON,                     :   Civil Action No.
BOROUGH OF STEELTON                      :
COUNCIL, WILLIAM SHAUB,                  :
CHIEF, BOROUGH OF                        :   JURY TRIAL DEMANDED
STEELTON POLICE                          :
DEPARTMENT, AND CIERA                    :
DENT, MAYOR, BOROUGH OF                  :
STEELTON,                                :
                                         :
                    Defendants           :

## COMPLAINT

## PARTIES

1.      Plaintiff, Dory A. Martin ("Ms. Martin" or "Plaintiff"), a married, adult female, currently resides at 1991 Market Street, Middletown, PA 17057.

2.      Defendant, the Borough of Steelton (the "Borough"), is a Pennsylvania political subdivision and municipality with its principal place of business at 123 N. Front Street, Steelton, Dauphin County, Pennsylvania 17113.

3.      At all relevant times, Defendant, Borough of Steelton Council (the "Borough Council"), consisted of the seven elected individuals identified in paragraphs 4 through 10 below.

4.      At all relevant times, Brian Proctor was an elected member and President of the Borough Council, with a principal place of business at 123 N. Front Street, Steelton, Dauphin County, Pennsylvania 17113.

5.      At all relevant times, Michael A. Segina was an elected member and Vice President of the Borough Council, with a principal place of business at 123 N. Front Street, Steelton, Dauphin County, Pennsylvania 17113.

6.      At all relevant times, Denee House was an elected member of the Borough Council, with a principal place of business at 123 N. Front Street, Steelton, Dauphin County, Pennsylvania 17113.

7.      At all relevant times, Natashia Woods was an elected member of the Borough Council, with a principal place of business at 123 N. Front Street, Steelton, Dauphin County, Pennsylvania 17113.

8.      At all relevant times, William Jones was an elected member of the Borough Council, with a principal place of business at 123 N. Front Street, Steelton, Dauphin County, Pennsylvania 17113.

9.      At all relevant times, Willie Slade was an elected member of the Borough Council, with a principal place of business at 123 N. Front Street, Steelton, Dauphin County, Pennsylvania 17113.

10.    At all relevant times, Keontary R. Hodge was an elected member of the Borough Council, with a principal place of business at 123 N. Front Street, Steelton, Dauphin County, Pennsylvania 17113.

11.    At all relevant times, Defendant, William Shaub, was Interim Chief, Borough of Steelton Police Department, with his principal place of business located at 123 N. Front Street, Steelton, Dauphin County, Pennsylvania 17113.

12.    At all relevant times, Defendant, Ciera Dent, was Mayor of the Borough of Steelton, with her principal place of business located at 123 N. Front Street, Steelton, Dauphin County, Pennsylvania 17113.

13.    At all relevant times, the Borough Council served as the governing Appointing Authority for the Borough and its Police Department.

## JURISDICTION AND VENUE

14.    This Court has subject matter jurisdiction over this action because Ms. Martin's claims arise under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.*, as amended ("ADA") and under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §2000(e) *et seq*. ("Title VII").

15.    This is a civil action involving claims in excess of $75,000, exclusive of interest and costs.   Jurisdiction is based on 28 U.S.C. §1331 (federal question).

16.    This Court has supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. §1367(a).

17.    Ms. Martin exhausted her administrative remedies by filing a complaint against Defendant with the Pennsylvania Human Relations Commission at PHRC Case No. 202201409, which was dual filed with the Equal Employment Opportunity Commission ("EEOC") at Charge No. 17F-2023-60337.

18.    The U.S. Department of Justice, Civil Rights Division, issued a right-to-sue notice to Ms. Martin fewer than 90 days before her filing of this Complaint.

19.    Venue over this action lies with the United States District Court for the Middle District of Pennsylvania.

## **FACTUAL ALLEGATIONS COMMON TO ALL COUNTS**

20.    On or about June 1, 2015, Ms. Martin was hired by the Borough's Police Department as a full-time patrol officer, and in 2018, she began working as a full-time detective.

21.    At all relevant times, Ms. Martin was a member of two protected classes:   sex/gender (female) and disabled/disability.

22.    At all relevant times, Ms. Martin was a qualified employee and was able to perform the essential functions of her job with or without accommodation.

23.    The Borough and the Borough Council knew or should have known about Ms. Martin's legally protected disabilities including:

(a)    physical and/or mental impairments that substantially limited one or more major life activities including, at certain times, her essential job functions;

(b)    mental and physical impairments resulting from work injuries including PTSD and panic attacks and three puncture wounds in her left arm, one of which injured her ulnar nerve at the elbow;

(c)    mental health impairments including Post Traumatic Stress Disorder (PTSD), Generalized Anxiety Disorder (GAD), and panic attacks;

(d)    a record of mental health impairments; and

(e)    being regarded as having such impairments.

24.    On June 20, 2022, during the course and scope of her employment, and in the performance of her duties as a detective, Ms. Martin was qualifying with her pistol on the Steelton Police's gun range for yearly qualifications.

25.    On June 20, 2022, at the stated location, Ms. Martin was suddenly attacked by the Steelton Police's K-9 (Beny).

26.    The K-9 handler, Officer Scott Schaeffer, did not have the K-9 on a leash or muzzle and did not have the remote to the dog's electrical collar.

27.    In violation of the department's Standard Operating Procedures (SOPs), Officer Schaeffer, as handler, failed to have any control of K-9 Beny and was therefore unable to prevent the K-9 from attacking and biting Ms. Martin.

28.     Although the SOPs required Officer Schaeffer to submit a bite report at the end of his shift, no report was completed and filed until several days later.

29.     As a result of the K-9's uncontrolled, unprovoked attack, Ms. Martin sustained puncture wounds, lacerations, abrasions, and/or contusions on her left arm and lost feeling in her ulnar nerve.

30.     As a result of the K-9's uncontrolled, unprovoked attack, Ms. Martin had post-traumatic symptoms including:

         (a)     PTSD and panic attacks triggered by various circumstances including gunshots, fireworks, and any barking or attacking dog;

         (b)     nightmares and upsetting intrusive memories of the K-9's attack; and

         (c)     hypervigilance and a conscious avoidance of any reminders of her experiences as a police officer.

31.     After the uncontrolled, unprovoked K-9 attack, Ms. Martin received medical treatment and mental health counseling.

32.     After the K-9 attack, Ms. Martin provided her physician's work excuse to the Borough and requested accommodation and medical leave.   Her leave was approved by the Borough's Interim Chief of Police, William Shaub ("Chief Shaub").

33.     On June 22, and June 24, 2022, Ms. Martin was evaluated by the Borough's Workers' Compensation Panel Provider, Dr. Daniel Kambic (who was also Ms. Martin's primary care physician).

34.     On July 7, 2022, due to Ms. Martin's ongoing panic attacks, Dr. Kambic restricted her from having any contact with K-9 Officer Schaeffer and the K-9 Beny.

35.     On or about July 7, 2022, after Ms. Martin provided Dr. Kambic's work restrictions to Chief Shaub and requested that accommodation, he became extremely hostile and irritated.

36.     Roughly two or three days later, Chief Shaub called Ms. Martin into his office and advised that if her ongoing work restrictions remained in place, she would be demoted to a patrol position on a permanent night shift (6:00 p.m. to 6:00 a.m.).

37.     On July 21, 2022, having been denied ongoing job accommodation and having no alternative, Ms. Martin met with Dr. Kambic and asked him to remove his work restriction and to authorize her returning to her detective position.

38.     On July 27, 2022, Ms. Martin was off duty, but was called to a scene where human remains were found.

39.    At the scene (and on duty) were K-9 Officer Schaeffer, K-9 dog (Beny), and Officer Adrienne Monroy (all of whom were on duty at the time of Beny's attack on Ms. Martin).

40.    As the Detective and lead officer called to the scene, Ms. Martin had full authority over all officers, who were required to follow her commands in accordance with the SOPs.

41.    Displaying their personal, ongoing hostility toward Ms. Martin, Officers Schaeffer and Monroy refused to obey her commands and jeopardized the integrity of the scene.

42.    On or about August 15, 2022, Chief Shaub notified Ms. Martin at work that she had violated the Police Department's regulations regarding social media, resulting in a potential unpaid suspension ranging from five to ten days.

43.    On or about August 18, 2022, Ms. Martin submitted her letter of resignation to Chief Shaub effective October 18, 2022.   Attached as **Exhibit P-1** is a copy of Ms. Martin's letter.

44.    At the time she submitted her resignation, Ms. Martin had no alternative but to resign, taking into account work conditions that any reasonable person would have found intolerable including:   Defendants' discriminatory and retaliatory actions in response to her work-related injuries and disabilities; Defendants' ongoing hostility and antagonism; Chief Shaub's and/or Mayor Dent's

refusal to accommodate her work restrictions and disabilities; their related, threatened demotion of Ms. Martin in response to her requested work restrictions and requested accommodation; and their actual or threatened suspension of Ms. Martin.

45.    By letter dated August 19, 2022, Chief Shaub, on behalf of the Police Department, claimed that he had accepted Ms. Martin's resignation effective October 18, 2022.   Attached as **Exhibit P-2** is a copy of Chief Shaub's August 19, 2022, letter.

46.    Chief Shaub's August 19 letter, purporting to accept Ms. Martin's resignation, did not state whether her resignation was subject to Mayor Dent's or the Borough Council's approval.

47.    In paragraph 2 of his August 19 letter, Chief Shaub falsely stated Ms. Martin and her union had agreed she would "... serve an unpaid suspension of eight (8) days at times designated by the Borough."

48.    From August 20, through August 30, 2022, Ms. Martin was on accommodated medical leave prescribed by Dr. Kambic.

49.    While Ms. Martin was on leave, Chief Shaub further retaliated against her (and displayed his discriminatory animus) by unlawfully removing her training certificates from her desk and by refusing to return them (even though he had copies thereof in her personnel file).

50.    Ms. Martin's able-bodied, male officers/comparators were treated more favorably in personnel matters (including in their use of social media) and were not similarly threatened or disciplined with demotion and suspension.

51.    By email dated August 22, 2022, the union's representative, Mark Andreozzi, corrected the false statement in Chief Shaub's August 19, 2022, letter, which asserted that Detective Martin had agreed to accept her suspension.   Mr. Andreozzi requested that a corrected letter be issued and that Chief Shaub explain the Borough's rationale for the amount of Ms. Martin's discipline.   Attached as **Exhibit P-3** is a copy of Mr. Andreozzi's August 22, 2022, email.

52.    On or about August 28, 2022, Ms. Martin informed Chief Shaub (orally and in writing) that she had rescinded her resignation (which had yet to be approved by the Mayor and/or by Borough Council as required).   Attached as **Exhibit P-4** is a copy of Ms. Martin's August 28, 2022, email.

53.    Ms. Martin's August 28 letter reaffirmed that she had been "... struggling with PTSD and panic attacks ..." since the K-9 attack on June 20, 2022, and continued to be treated by Dr. Kambic through the workers' compensation process.

54.    Ms. Martin's August 28 letter requested that her payroll be changed to Heart and Lung benefits because she was on medical leave approved by Dr. Kambic (the workers' compensation panel doctor).

55.    Ms. Martin's August 28 letter also requested a hearing to address the Borough's eight-day suspension without pay based on her purported violation of the Police Department's social media policy.

56.    By letter dated August 30, 2022 (hand delivered to Ms. Martin at her home while she was on medical leave), Chief Shaub informed her that the Borough would not accept the rescission of her resignation, claiming that the Borough had already accepted her resignation.   Attached as **Exhibit P-5** is a copy of Chief Shaub's August 30, 2022, letter.

57.    In his letter, Chief Shaub not only falsely stated that Ms. Martin had failed to provide any physician's note substantiating her PTSD and panic attacks, he denied her claim for Heart and Lung benefits (which are granted based on an officer's temporary disability).

58.    During their August 30, 2022, meeting at Ms. Martin's home, Chief Shaub took Ms. Martin's gun, badge, and keys to her assigned car and placed her on administrative leave until September 19, 2022.

59.    By letter dated September 20, 2022, Chief Shaub claimed that the Borough Council had ratified her resignation at its September 19, 2022, public meeting with her last day of employment being October 18, 2022.   Attached as **Exhibit P-6** is a copy of Chief Shaub's September 20, 2022, letter.

60.     Chief Shaub's August 19, August 30, and September 20, 2022, letters contain shifting, conflicting, and pretextual statements concerning the timing and legitimacy of the Borough's and Borough Council's actions including their purported approval of Ms. Martin's resignation (and their refusal to address her rescission of her resignation).

61.     Chief Shaub's August 19, 2022, letter represents that the "Steelton Borough Police Department accepts, with regret, your resignation effective October 18, 2022."

62.     Chief Shaub's August 30 letter falsely states as follows:   "Steelton Borough (Steelton Police **and** Mayor) notified you in writing that it accepted your resignation on August **23**, 2022 (sic)." (emphasis added).   *Compare* Exhibit P-2 (Chief Shaub's letter signed by him and dated August 19, 2022, confirming an effective resignation date of October 18, 2022).

63.     Contrary to the representation in Chief Shaub's August 30 letter, Ms. Martin had continuing work restrictions and disabilities on and after August 30, 2022.

64.     At its September 19, 2022, public meeting, Borough Council voted to approve Ms. Martin's resignation effective October 23, 2022 (not October 18, 2022), but did not address the legal effect of Ms. Martin's rescission of her resignation.   *Compare* Exhibits P-5 and P-6 (Chief Shaub's August 30, 2022, and

September 20, 2022, letters, claiming the effective date of Ms. Martin's resignation was October 18, 2022.)

65.    On August 28, 2022, Ms. Martin timely rescinded her resignation before its stated effective date on October 18, 2022 (and before the Mayor approved the resignation, and before the Borough Council, as Appointing Authority, was authorized to consider denying or approving the resignation and its effective date).

66.    Chief Shaub and/or Mayor Dent were not authorized to accept Ms. Martin's resignation without Borough Council's approval (or ratification) on September 19, 2022.

67.    Alternatively, assuming Chief Shaub and/or Mayor Dent were authorized to approve the personnel action, they displayed their discriminatory animus by refusing to accommodate Ms. Martin, by denying her Heart and Lung benefits, by denying her requested hearing on her suspension, and by refusing to approve her rescission of her resignation.

68.    Alternatively, the Appointing Authority, the Borough Council, displayed their discriminatory animus by refusing to accommodate Ms. Martin, by denying her Heart and Lung benefits, by denying her requested hearing on her suspension, and by refusing to approve the rescission of her resignation.

69.    Alternatively, assuming Defendants, and each of them, were authorized and legally entitled to accept, ratify, and enforce Ms. Martin's resignation, she had no alternative but to resign based on her objectively intolerable work conditions including:   Defendants' discriminatory and retaliatory actions as alleged above; their ongoing hostility and antagonism; Chief Shaub's and/or Mayor Dent's refusal to accommodate her work restrictions and disabilities; their related, threatened demotion of Ms. Martin; and their actual or threatened suspension of Ms. Martin.

70.    On information and belief, Chief Shaub and/or Mayor Dent denied Ms. Martin's requested rescission of her resignation based on discriminatory and retaliatory reasons including their belief that Ms. Martin's disabilities prevented her from working as a police officer.

71.    When Ms. Martin provided her work restrictions and requested accommodation, Chief Staub threatened her with a demotion and refused her requested accommodation, forcing her to ask her treating physician for an authorization to return to her detective position, thereafter facing ongoing hostility, discrimination, and retaliation.

72.    Although Ms. Martin's disabilities entitled her to Heart and Lung benefits, Defendants denied those benefits and forced Ms. Martin to use her sick

time from September 20, to October 4, 2022, thereafter placing her on administrative leave from October 4, to October 18, 2022.

73.    Defendants further denied payment of Ms. Martin's accumulated sick time of 669.94 hours, representing more than $27,000 in unpaid compensation.

74.    Chief Shaub, Mayor Dent, the Borough, and/or members of the Borough Council (collectively, "Decision-makers") discriminated against Ms. Martin because of her protected classes (disability and gender) and treated officers who were not in her protected classes more favorably with respect to the compensation, terms, conditions, and privileges of employment.

75.    Although Defendants' Decision-makers knew (or should have known) about Ms. Martin's disabling conditions and her requested accommodation, they failed to engage in an interactive process and failed to accommodate her by allowing her to rescind her resignation before its stated effective date (October 18, 2022), before or after any provisional acceptance by Chief Shaub and/or Mayor Dent, and before her resignation was accepted or purportedly ratified by Borough Council on September 19, 2022.

76.    At various relevant times, Ms. Martin engaged in protected activity within the meaning of state and federal law including:   requesting reasonable accommodation for her work restrictions and medical leave; for the right to Heart and Lung benefits based on her disabilities; for her right to a hearing on her

suspension; and for her right to rescind her resignation, as confirmed to Chief Shaub on August 28, 2022.

77.    Defendants' Decision-makers knew (or should have known) about Ms. Martin's ongoing requests for accommodation and retaliated against her after she engaged in those protected activities.

78.    Ms. Martin received various adverse actions ("Adverse Actions") by Defendants' Decision-makers including:   Defendants' refusal to engage in an interactive process; Chief Shaub's and/or Mayor Dent's refusal to accommodate Ms. Martin's work restrictions and their related, threatened demotion; Chief Shaub's and/or Mayor Dent's denial of Ms. Martin's Heart and Lung benefits; Chief Shaub's and/or Mayor Dent's actual or threatened suspension of Ms. Martin; Defendants' refusal to pay her accumulated sick time; Defendants' refusal to accept her rescinded resignation; Ms. Martin's involuntary discharge or constructive discharge; and such other wrongful actions alleged above.

79.    Defendants had no legitimate non-discriminatory, non-retaliatory reason for their Adverse Actions against Ms. Martin.

80.    Defendants' Decision-makers displayed their discriminatory animus and pretextual actions against Ms. Martin in that:

(a)     Chief Shaub and/or Mayor Dent made conflicting, implausible statements about whether and when they individually or collectively had made any authorized acceptance of Ms. Martin's resignation.

(b)     After Ms. Martin requested ongoing accommodation in her August 28, 2022, email (Exhibit P-4), Defendants illegally retaliated and took Adverse Actions against her without engaging in an interactive process.

(c)     After refusing to accommodate Ms. Martin, Defendants retaliated against her based on illegitimate, contrived, and shifting reasons including their pretextual claim that her resignation had been approved before its effective date.

(d)     When Ms. Martin submitted the rescission of her resignation, Defendants had yet to hire a replacement for her and had no legitimate non-discriminatory, non-retaliatory reason to deny her rescission.

81.     Two or more of Defendants' Decision-makers (including Chief Shaub and Mayor Dent) aided, abetted, compelled, incited, and/or coerced the Adverse Actions against Ms. Martin, as alleged herein.

82.     Alternatively, as authorized agents of the Borough, Chief Shaub's, Mayor Dent's, and Borough Council's discriminatory animus toward Ms. Martin is imputed to the Borough under the doctrine of respondeat superior.

83.     Chief Shaub and/or Mayor Dent, and the other Defendants participated in the Adverse Actions, were in a position to accept Ms. Martin's rescinded resignation, and refused to take prompt action to continue her employment.

## COUNT I
## DISABILITY DISCRIMINATION/REFUSAL TO ACCOMMODATE (ADA)
### Dory A. Martin v. Borough of Steelton, Borough of Steelton Council

84.     Ms. Martin incorporates by reference herein paragraphs 1 through 83 above.

85.     All of Defendants' illegal actions and inactions, as alleged herein, were done or were not done by themselves and by Chief Shaub and/or Mayor Dent, acting as Ms. Martin's supervisors with actual, apparent, or ostensible authority.

86.     Alternatively, Chief Shaub and/or Mayor Dent had discriminatory animus toward Ms. Martin, and their authorized or recommended actions were imputed to Defendants, Borough of Steelton and Borough of Steelton Council, under the doctrine of respondeat superior.

87.     As alleged more fully above, Defendants, Borough of Steelton and Borough of Steelton Council, discriminated against Ms. Martin based on her disabilities.

88.     As alleged more fully above, Defendants refused to engage in an interactive process concerning Ms. Martin's disabilities.

89.     Defendants refused to accommodate Ms. Martin's disabilities and treated her less favorably than her able-bodied comparators with respect to the compensation, terms, conditions, and privileges of employment.

90.     Defendants had no legitimate, non-discriminatory reason for their Adverse Actions.

91.     Defendants' Adverse Actions included Defendants' involuntary, illegal discharge of Ms. Martin.

92.     Alternatively, if Ms. Martin's resignation was lawfully and timely approved by Defendants, her separation from employment constituted a constructive discharge.

93.     Ms. Martin's disabilities were a motivating factor in Defendants' Adverse Actions against her, as alleged above.

94.     As a result of Defendants' unlawful conduct and Adverse Actions, Ms. Martin has sustained lost wages, lost bonuses, lost retirement and employee benefits, medical expenses, front pay, and other unliquidated losses and damages in excess of $75,000, plus interest and costs.

95.     As a further result of Defendants' unlawful conduct and Adverse Actions, Ms. Martin has suffered emotional pain, suffering, inconvenience, mental anguish, depression, anxiety, related conditions, and loss of life's enjoyment in an unliquidated amount in excess of $75,000, plus interest and costs.

96.     Additionally, as a result of Defendants' unlawful conduct and Adverse Actions, Ms. Martin is entitled to attorneys' fees in excess of $75,000, plus interest and costs.

**WHEREFORE**, Plaintiff, Dory A. Martin, demands that judgment be entered in her favor and against Defendants, Borough of Steelton and Borough of Steelton Council, including the following relief:

A.     reinstatement to her prior position or a comparable position with Defendant, Borough of Steelton;

B.     compensation for back pay, front pay, lost retirement, medical expenses, lost accumulated sick leave, and other lost employee compensation and benefits;

C.     compensatory and statutory damages in amounts to be determined at trial;

D.     attorneys' fees, costs, and interest; and

E.     such other relief as the Court deems appropriate.

**COUNT II**
**DISABILITY RETALIATION (ADA)**
**<u>Dory A. Martin v. Borough of Steelton, Borough of Steelton Council</u>**

97.     Ms. Martin incorporates by reference herein paragraphs 1 through 96 above.

98.    As alleged more fully above, Ms. Martin engaged in protected activities including requesting accommodation for her disabilities including her work restrictions and medical leave, her requested Heart and Lung benefits, her requested hearing on her suspension, and her rescission of her resignation.

99.    Defendants discriminated and retaliated against Ms. Martin after she engaged in protected activities including by taking Adverse Actions as alleged above.

100.    There was a causal connection between Ms. Martin's protected activities and Defendants' Adverse Actions.

101.    Ms. Martin had a reasonable, good faith belief that she had a right to be protected from discrimination and that her rights had been violated.

102.    As a result of Defendants' unlawful conduct, Ms. Martin has sustained lost wages, lost bonuses, lost retirement and employee benefits, medical expenses, front pay, and other unliquidated losses and damages in excess of $75,000, plus interest and costs.

103.    As a further result of Defendants' unlawful conduct and Adverse Actions, Ms. Martin has suffered emotional pain, suffering, inconvenience, mental anguish, depression, anxiety, related conditions, and loss of life's enjoyment in an unliquidated amount in excess of $75,000, plus interest and costs.

104.    Additionally, as a result of Defendants' unlawful conduct, Ms. Martin is entitled to attorneys' fees in excess of $75,000, plus interest and costs.

**WHEREFORE**, Plaintiff, Dory A. Martin, demands that judgment be entered in her favor and against Defendants, Borough of Steelton and Borough of Steelton Council, including the following relief:

A.    reinstatement to her prior position or a comparable position with Defendant, Borough of Steelton;

B.    compensation for back pay, front pay, lost retirement, medical expenses, lost accumulated sick leave, and other lost employee compensation and benefits;

C.    compensatory and statutory damages in amounts to be determined at trial;

D.    attorneys' fees, costs, and interest; and

E.    such other relief as the Court deems appropriate.

## COUNT III
## GENDER DISCRIMINATION (Title VII)
## <u>Dory A. Martin v. Borough of Steelton, Borough of Steelton Council</u>

105.    Ms. Martin incorporates by reference herein paragraphs 1 through 104 above.

106.    Ms. Martin's protected class is gender/sex (female).

107.    Ms. Martin was qualified for her position and able to perform the essential functions of her job with or without accommodation.

108.    Ms. Martin was treated less favorably than her similarly situated male comparators with respect to the compensation, terms, conditions, and /or privileges of employment.

109.    For example, when she separated from employment, Ms. Martin was not paid for any of her accumulated sick time as compared to other similarly situated male officers separated from employment.

110.    Ms. Martin's male comparators were not similarly disciplined for their violations of the department's social media policy.

111.    Ms. Martin's male comparators did not receive Ms. Martin's Adverse Actions under the same or similar circumstances.

112.    Defendants discriminated against Ms. Martin based on her protected class.

113.    Defendants had no legitimate, non-discriminatory reason for their Adverse Actions.

114.    As a result of Defendants' unlawful conduct and Adverse Actions, Ms. Martin has sustained lost wages, lost bonuses, lost retirement and employee benefits, medical expenses, front pay, and other unliquidated losses and damages in excess of $75,000, plus interest and costs.

115.   As a further result of Defendants' unlawful conduct and Adverse Actions, Ms. Martin has suffered emotional pain, suffering, inconvenience, mental anguish, depression, anxiety, related conditions, and loss of life's enjoyment in an unliquidated amount in excess of $75,000, plus interest and costs.

116.   Additionally, as a result of Defendants' unlawful conduct and Adverse Actions, Ms. Martin is entitled to attorneys' fees in excess of $75,000, plus interest and costs.

**WHEREFORE**, Plaintiff, Dory A. Martin, demands that judgment be entered in her favor and against Defendants, Borough of Steelton and Borough of Steelton Council, including the following relief:

A.   reinstatement to her prior position or a comparable position with Defendant, Borough of Steelton;

B.   compensation for back pay, front pay, lost retirement, medical expenses, lost accumulated sick leave, and other lost employee compensation and benefits;

C.   compensatory and statutory damages in amounts to be determined at trial;

D.   attorneys' fees, costs, and interest; and

E.   such other relief as the Court deems appropriate.

**COUNT IV**
**DISABILITY DISCRIMINATION/**
**REFUSAL TO ACCOMMODATE/RETALIATION (PHRA)**
**Dory A. Martin v. Chief William Shaub and Mayor Ciera Dent**

117.    Ms. Martin incorporates by reference herein paragraphs 1 through 116 above.

118.    Ms. Martin's protected class is disabled/disability.

119.    Borough Council and the Borough were and are liable for their underlying discriminatory acts or practices against Ms. Martin, as alleged in Counts I and II above.

120.    As employees and/or officials acting in a supervisory capacity, Chief Shaub and Mayor Dent are individually liable for aiding, abetting, compelling, inciting, and/or coercing the Borough's and Borough Council's underlying discriminatory practices under Section 955(e) of the Pennsylvania Human Relations Act (PHRA), 43 Pa. C.S. § 955(e).

121.    Chief Shaub and Mayor Dent were involved in Borough Council's and the Borough's direct acts or practices of discrimination; or were in a position to end the direct acts or practices, knew or should have known about the underlying discriminatory acts or practices, and refused to take prompt action to end them.

122.    As a result of Chief Shaub's and Mayor Dent's unlawful actions, Ms. Martin has sustained lost wages, lost bonuses, lost retirement and employee

benefits, medical expenses, front pay, and other unliquidated losses and damages in excess of $75,000, plus interest and costs.

123.   As a further result of Chief Shaub's and Mayor Dent's unlawful actions, Ms. Martin has suffered emotional pain, suffering, inconvenience, mental anguish, depression, anxiety, related conditions, and loss of life's enjoyment in an unliquidated amount in excess of $75,000, plus interest and costs.

124.   Additionally, as a result of Chief Shaub's and Mayor Dent's unlawful actions, Ms. Martin is entitled to attorneys' fees and costs in excess of $75,000, plus interest and costs.

**WHEREFORE**, Plaintiff, Dory A. Martin, demands that judgment be entered in her favor and against Defendants, William Shaub, Chief, Borough of Steelton Police Department, and Ciera Dent, Mayor, Borough of Steelton, including the following relief:

A.      reinstatement to her prior position or a comparable position with Defendant, Borough of Steelton;

B.      compensation for back pay, front pay, lost retirement, medical expenses, lost accumulated sick leave, and other lost employee compensation and benefits;

C.      compensatory and statutory damages in amounts to be determined at trial;

D.      attorneys' fees, costs, and interest; and

E.      such other relief as the Court deems appropriate.

**COUNT V**
**GENDER DISCRIMINATION (PHRA)**
**<u>Dory A. Martin v. Chief William Shaub and Mayor Ciera Dent</u>**

125.    Ms. Martin incorporates by reference herein paragraphs 1 through 124 above.

126.    Ms. Martin's protected class is disabled/disability.

127.    Borough Council and the Borough were and are liable for their underlying discriminatory acts or practices against Ms. Martin, as alleged in Count III above.

128.    As employees and/or officials acting in a supervisory capacity, Chief Shaub and Mayor Dent are individually liable for aiding, abetting, compelling, inciting, and/or coercing the Borough's and Borough Council's underlying discriminatory practices under Section 955(e) of the Pennsylvania Human Relations Act (PHRA), 43 Pa. C.S. § 955(e).

129.    Chief Shaub and Mayor Dent were involved in Borough Council's and the Borough's direct acts or omissions of discrimination; or were in a position to end the direct acts or practices, knew or should have known about the underlying discriminatory acts or practices, and refused to take prompt action to end them.

130.    As a result of Chief Shaub's and Mayor Dent's unlawful actions, Ms. Martin has sustained lost wages, lost bonuses, lost retirement and employee benefits, medical expenses, front pay, and other unliquidated losses and damages in excess of $75,000, plus interest and costs.

131.    As a further result of Chief Shaub's and Mayor Dent's unlawful actions, Ms. Martin has suffered emotional pain, suffering, inconvenience, mental anguish, depression, anxiety, related conditions, and loss of life's enjoyment in an unliquidated amount in excess of $75,000, plus interest and costs.

132.    Additionally, as a result of Chief Shaub's and Mayor Dent's unlawful actions, Ms. Martin is entitled to attorneys' fees and costs in excess of $75,000, plus interest and costs.

**WHEREFORE**, Plaintiff, Dory A. Martin, demands that judgment be entered in her favor and against Defendants, William Shaub, Chief, Borough of Steelton Police Department, and Ciera Dent, Mayor, Borough of Steelton, including the following relief:

A.    reinstatement to her prior position or a comparable position with Defendant, Borough of Steelton;

B.    compensation for back pay, front pay, lost retirement, medical expenses, lost accumulated sick leave, and other lost employee compensation and benefits;

C.    compensatory and statutory damages in amounts to be determined at trial;

D.    attorneys' fees, costs, and interest; and

E.    such other relief as the Court deems appropriate.

Respectfully submitted,

KEEFER WOOD ALLEN & RAHAL, LLP

Dated:   10/29/2025              By:   s/ Bradford Dorrance
                                      Bradford Dorrance
                                      PA I.D. #32147
                                      417 Walnut Street, 3rd Floor
                                      Harrisburg, PA   17101
                                      bdorrance@keeferwood.com
                                      (717) 255-8014 (phone)

                                      (Attorneys for Plaintiff)