**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DORY A. MARTIN,<br>Plaintiff,<br>v.<br>BOROUGH OF STEELTON, et al.,<br>Defendants. | No. 1:25-CV-02044-JKM |

**MEMORANDUM OF LAW IN SUPPORT OF THE STEELTON BOROUGH DEFENDANTS' MOTION TO PARTIALLY DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

Defendants, Borough of Steelton, Borough of Steelton Council, Chief William Shaub, Mayor Ciera Dent, Brian Proctor, Michael A. Segina, Denee House, Natashia Woods, William Jones, Willie Slade and Keontay R. Hodge (collectively the "Steelton Borough Defendants"), by and through their undersigned counsel, Siana Law LLP, file this Memorandum of Law in support of their Motion to Partially Dismiss Plaintiff's Complaint pursuant to F.R.C.P. 12(b)(6).

## I. PROCEDURAL BACKGROUND

Plaintiff Dory Martin ("Plaintiff" or "Martin") initiated this action on October 29, 2025. A request for waiver of service of process was sent on November 3, 2025.

Defendants waived service of process on November 6, 2025, and now move for partial dismissal of the Complaint pursuant to F.R.C.P. 12(b)(6).

## II. STATEMENT OF FACTS[1]

Martin was hired by the Steelton Borough Police Department as a full-time patrol officer on or about June 1, 2015. (ECF #1, ¶20). In 2018, she began working as a full-time detective. (ECF #1, ¶20).

On June 20, 2022, Martin was practicing with her pistol on the Steelton Police Department's gun range to meet yearly qualifications. (ECF #1, ¶24). While doing so, she was attacked by Steelton Police K-9 Beny after its handler, Officer Scott Schaeffer, lost control of Beny. (ECF #1, ¶¶25, 27). As a result of the canine attack, Martin sustained puncture wounds, lacerations, abrasions, and/or contusions on her left arm and lost feeling in her ulnar nerve. (ECF #1, ¶29). She also developed symptoms of post-traumatic stress disorder (PTSD), including panic attacks, nightmares and intrusive memories of the attack, and hypervigilance. (ECF #1, ¶30).

Following the attack, Martin requested an accommodation and medical leave from the Steelton Borough Police Department, providing a physician's work excuse. (ECF #1, ¶32). Her request for leave was approved by then-Interim Chief of Police, William Shaub. (ECF #1, ¶32).

[1] The factual allegations in this section are accepted as true for purposes of this Motion only, without admitting the same.

On June 22 and 24, 2022, Martin was evaluated by Steelton Borough's Workers' Compensation Panel Provider, Dr. Daniel Kambic. (ECF #1, ¶33). On July 7, 2022, because of Martin's ongoing panic attacks, Dr. Kambic restricted Martin from having any contact with K-9 Officer Schaeffer and K-9 Beny. (ECF #1, ¶34). Martin provided this information to Chief Shaub and requested an accommodation, whereupon Chief Shaub became extremely hostile and irritated. (ECF #1, ¶35). Two or three days later, Chief Shaub advised Martin that if her ongoing work restriction remained in place, she would be demoted to a patrol position on a permanent night shift (6:00 PM to 6:00 AM). (ECF #1, ¶36).

On July 21, 2022, Martin requested that Dr. Kambic remove her work restrictions and authorize her to return to her detective position. (ECF #1, ¶37).

On July 27, 2022, Martin was called to a scene where human remains were found. (ECF #1, ¶38). Officer Schaeffer and K-9 Beny were also on the scene, as was Officer Adrienne Monroy. (ECF #1, 39).

On or about August 15, 2022, Chief Shaub notified Martin that she had violated the Police Department's regulations on social media usage, which would potentially result in unpaid suspension for five to ten days. (ECF #1, ¶42).

On or about August 18, 2022, Martin submitted her resignation to Chief Shaub because of the threatened demotion due to her request for accommodation and threatened suspension for her social media usage. (ECF #1, ¶44). In a letter dated

August 19, 2022 Chief Shaub accepted Martin's resignation on behalf of the Police Department. (ECF #1, ¶45).

From August 20 through August 30, 2022, Martin was on medical leave prescribed by Dr. Kambic. (ECF #1, 48). While Martin was on leave, Chief Shaub removed her training certificates from her desk and refused to return them (despite having copies in her personnel file). (ECF #1, ¶49).

On or about August 28, 2022, Martin informed Chief Shaub by letter that she was rescinding her resignation, which had not yet been approved by the Mayor or Borough Council. (ECF #1, ¶52). This letter also advised Chief Shaub that she had been struggling with panic attacks since the K-9 attack in June and was continuing to receive treatment from Dr. Kambic through the workers' compensation process. (ECF #1, ¶53). She also requested that her payroll be changed to Heart and Lung benefits because she was on medical leave approved by Dr. Kambic and that she requested a hearing to address the Borough's eight-day unpaid suspension. (ECF #1, ¶54).

On August 30, 2022, Chief Shaub responded by letter that the Borough would not accept the rescission of her resignation because the Borough had already accepted it. (ECF #1, ¶56). On the same day, Chief Shaub took Martin's gun, badge, and police car keys and placed her on administrative leave until September 19, 2022. (ECF #1, ¶58). Martin used sick time from September 20 to October 4, 2022 and

was thereafter placed on administrative leave from October 4 until October 18, 2022. (ECF #1, ¶72). On September 19, 2022, Steelton Borough Council ratified Martin's resignation at a public meeting. (ECF #1, ¶59).

## III. QUESTIONS PRESENTED

**A. Whether Plaintiff's gender discrimination claims under Title VII and the PHRA (Counts IV and V) should be dismissed?**

Suggested Answer: **Yes**.

**B. Whether Plaintiffs' ADA and PHRA Failure to Accommodate Claims should be dismissed?**

Suggested Answer: **Yes.**

**C. Whether the Borough Council should be dismissed as an improper/redundant Defendant?**

Suggested Answer: **Yes**.

**D. Whether the individual Borough Council Defendants and Mayor Dent should be dismissed?**

Suggested Answer: **Yes**.

**E. Whether Martin should be precluded from supporting adverse employment action with a theory of constructive discharge?**

Suggested Answer: **Yes.**

## IV. STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b) tests the legal sufficiency of the complaint. *Sturm v. Clark*, 835 F.2d 1009 (3d Cir. 1987). A motion to dismiss for failure to state a claim may be granted if, after accepting all well-pleaded facts in the complaint as true and viewing them in the light most

favorable to the non-moving party, plaintiff is not entitled to relief. *Maio v. Aetna, Inc*., 221 F.3d 472 (3d Cir. 2000).

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint need not contain detailed factual allegations, it must have more than unadorned, "defendant-unlawfully-harmed-me" type of accusations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A district court must engage in a two-step inquiry to determine the sufficiency of the facts alleged in a complaint:

> First, the factual and legal elements of a claim should be separated. The district court must accept all of the complaint's well-pleaded facts as true but may disregard any legal conclusions. *Iqbal*, 129 S. Ct. at 1949. Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id*. at 1950. In other words, a complaint must do more than allege a plaintiff's entitlement to relief . . .. As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 129 S. Ct. at 1949.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Although a court must accept well-pleaded averments in a complaint as true, the assumption of truth

does not apply to legal conclusions couched as factual allegations, or to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 129 S. Ct. at 1949.

## V. LEGAL ARGUMENT

### A. Whether Plaintiff's gender discrimination claims under Title VII and the PHRA (Counts III and V) should be dismissed.

Because claims brought under Title VII and the PHRA are generally interpreted coextensively, the Title VII and PHRA claims will be analyzed together. *Faush v. Tuesday Morning, Inc.*, 808 F.3d 208, 213 (3d Cir. 2015). "A disparate treatment violation is made out when an individual of a protected group is shown to have been singled out and treated less favorably than others similarly situated on the basis of an impermissible criterion under Title VII." *E.E.O.C. v. Metal Service Co.*, 892 F.2d 341, 347 (E.D. Pa. 1990). The plaintiff must show discriminatory intent on the part of the employer. *Id*. Where there is no direct evidence of discrimination, discriminatory intent may be shown indirectly by establishing a *prima facie* case under the *McDonnell Douglas* framework. *Id*. (citing *McDonnell Douglas Corp. v, Green*, 411 U.S. 792 (1973)). A *prima facie* case of disparate treatment under Title VII requires the Plaintiff to show that "(1) s/he is a member of a protected class; (2) s/he was qualified for the position s/he sought to attain or retain; (3) s/he suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination." *Makky v. Chertoff*, 541

F.3d 205, 214 (3d Cir. 2008). To show that she suffered an adverse employment action under Title VII, a Plaintiff need only "show some harm respecting an identifiable term or condition of employment" – not necessarily a "significant" harm. *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 354-355 (2024).

Since Martin does not allege any direct evidence of discrimination, in her Complaint, she must rely set forth a *prima facie* case based upon the four factors in the McDonnell Douglas framework. Under this analysis. the Complaint is devoid of allegations supporting the elements of a disparate treatment claim based upon gender. A fair reading of the Plaintiff's Complaint shows that she simply alleges the following:

1. ¶50: Ms. Martin's able-bodied male officers/comparators were treated more favorably in personnel matters (including in their use of social media) and were not similarly threatened or disciplined with demotion and suspension.

2. ¶108: Ms. Martin was treated less favorably than her similarly situated male comparators with respect to the compensation, terms, conditions, and /or privileges of employment.

3. ¶109: For example, when she separated from employment, Ms. Martin was not paid for any of her accumulated sick time as compared to other similarly situated male officers separated from employment.

4. ¶110: Ms. Martin's male comparators were not similarly disciplined for their violations of the department's social media policy.111: Ms. Martin's male comparators did not receive Ms. Martin's adverse actions under the same or similar circumstances.

These allegations are entirely conclusory. Martin does not identify (by name or otherwise) a single alleged male comparator and pleads no facts to show that such comparators existed or how they were similarly situated. She gives no examples of other male employees who were denied accumulated sick time or permitted to violate the police department's social media policy without discipline. Nor does she identify any male comparators who were not terminated after requesting accommodations for a disability. Accordingly, there is nothing to support that whatever adverse action she experienced occurred under circumstances justifying an inference of intentional discrimination based upon her sex. The Title VII and PHRA claims for gender discrimination should be dismissed.

**B. The ADA and PHRA Failure to Accommodate Claims should be dismissed.**

The Third Circuit also treats claims for failure to accommodate under the ADA and PHRA coextensively and accordingly they will be analyzed together. *Capps v. Mondelez Global, LLC*, 847 F.3d 144, 150, n. 1 (3d Cir. 2017); *Hanafy v. Hill International, Inc.*, 669 F. Supp. 3d 419, 434 n. 5 (M.D. Pa. 2023) ("As in other respects, the ADA and PHRA are treated coextensively in the context of failure to

accommodate claims") (citing *Watson v. Drexel University*, 2021 WL 4429826, *4 & n. 7 (3d Cir. May 13, 2021)). "A plaintiff bringing an ADA failure to accommodate claim must establish: '(1) he was disabled and his employer knew it; (2) he requested an accommodation or assistance; (3) his employer did not make a good faith effort to assist; and (4) he could have been reasonably accommodated.'" *Capps*, 847 F.3d at 157 (quoting *Armstrong v. Burdette Tomlin Mem'l Hosp.*, 438 F.3d 240, 246 (3d Cir. 2005)).

Based upon the allegations in the Complaint, Martin fails to show that her requests for accommodation were denied. According to the Complaint, Martin made three requests that could be construed as requests for accommodations. Following the K-9 attack on June 20, 2022, the Complaint vaguely claims that she "requested accommodation and medical leave." While the Complaint fails to specify the nature of the requested accommodation (making it difficult to evaluate whether it was met), Martin nonetheless avers that her request for leave was approved by Chief Shaub. (ECF 1, P 32.) Permitting an employee to take leave can be a reasonable accommodation under ADA. *Vought v. Twin Tier Hospitality, L.L.C.*, 2019 WL 2501470, *5 (M.D. Pa. June 17, 2019) ("A finite period of unpaid medical leave may constitute a reasonable accommodation if the requested leave 'would enable the employee to perform his essential job functions in the near future'") (quoting

*Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 151 (3d Cir. 2004) Therefore, her first request for accommodation was honored.

The next request for accommodation occurred on July 7, 2022, when Martin (presumably now back on duty) requested that she be separated from Officer Schaeffer and K-9 Beny. Here, the Complaint fails to allege that Martin was denied the requested accommodation. It only alleges that Chief Shaub indicated that if this accommodation remained in place, she would (on some unspecified future date) be demoted to a patrol position on permanent night shift. Even if true, this does not show that she was denied the requested accommodation. By claiming she was denied an *ongoing* accommodation, Martin implicitly admits that she was provided with the requested accommodation.

Finally, Martin claims she was denied a requested accommodation by having her request for Heart and Lung benefits denied by letter on August 30, 2022. But she also alleges that she was on medical leave at the time. (ECF 1 at 48-49, 54). Again, placing an employee on leave can be a reasonable accommodation under the ADA. An employer is not obligated to provide the employee's preferred accommodation, but only an effective accommodation. *Yovtcheva v. City of Philadelphia Water Dept.*, 518 Fed App'x 116, 122 (3d Cir. 2013) (quoting *Gile v. United States, Inc.*, 95 F.3d 492, 499 (7th Cir. 1996). Because she fails to plead facts showing that she

was denied her requested accommodations, Martin's Failure to Accommodate claims should be dismissed.

**C. The Borough Council should be dismissed as an improper/redundant Defendant.**

Martin asserts claims against the Borough Council in addition to the Borough. At worst, the Borough Council is an improper defendant, as it has no legal existence independent of the municipality and cannot sue or be sued. At best, it is a redundant party, since any liability that attaches to the Borough Council will be borne by the Borough itself. *Satterfield v. Borough of Schuylkill Haven*, 12 F.2d 423, 431 (E.D. Pa. 1998). Either way, the Borough Council is an improper party and should be dismissed as a party in this case, with prejudice.

**D. The individual Borough Council Defendants and Mayor Dent should be dismissed.**

The Complaint fails to assert a cause of action against any of the named members of Borough Council (i.e., Proctor, Segina, House, Woods, Jones, Slade and Hodge). To the extent that the Complaint seeks to name them as Defendants in their individual capacities, the absence of any asserted causes of action against them warrants dismissal. To the extent that the individual Borough Council members are named in their official capacities, they are redundant parties since any official capacity claims against the individual Council members are simply claims against the Borough itself, which is a named Defendant. *Satterfield*, 12 F.2d at 431-432. Either way, all of the individual Borough Council members should be dismissed.

In contrast to the Borough Council members, causes of action are asserted against Mayor Ciera Dent (see Counts IV and V). Specifically, Martin asserts specific claims for disability discrimination, failure to accommodate, retaliation, and gender discrimination against Dent under the PHRA. However, the Complaint is devoid of any non-conclusory factual averments that show that Mayor Dent was involved in any of the alleged adverse employment actions against Martin or any decisions regarding her requested accommodations. Specifically, all the letters noting employment actions are signed by former Chief Shaub. The absence of any facts showing Mayor Dent's personal involvement in these decisions warrant dismissal. Accordingly, Mayor Dent should also be dismissed as a party in this action.

**E. Martin should be precluded from supporting adverse employment action with a theory of constructive discharge.**

A constructive discharge constitutes an adverse employment action. *Ellingsworth v. Hartford Fire Insurance Company*, 247 F. Supp. 3d 546, 556 (E.D. Pa. 2017), To find that a constructive discharge occurred, a court "need merely find that the employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." *Clegg v. Falcon Plastics, Inc.*, 174 Fed App'x 18, 27 (3d Cir. 2006) (quoting *Goss v. Exxon Office Sys. Co.*, 747 F.2d 885, 888 (3d Cir. 1984)). Conditions are intolerable if "a reasonable person in the employee's position would have felt compelled to resign –

that is, whether he would have had no choice but to resign." *Connors v. Chrysler Financial Corp.*, 160 F.3d 971, 786 (3d Cir. 1998) (quoting *Blistein v. St. John's College*, 74 F.3d 1459, 1468 (4th Cir. 1996)) (internal quotation marks omitted). The reasonable person standard is an objective standard, and it is not sufficient that the employee merely felt resigning would be the best or wisest option. *Id*.

The Third Circuit recognizes several factors that potentially indicate a constructive discharge: "(1) threat of discharge; (2) suggesting or encouraging resignation; (3) a demotion or reduction of pay or benefits; (4) involuntary transfer to a less desirable position; (5) alteration of job responsibilities; and (6) unsatisfactory job evaluations." *Lebofsky v. City of Philadelphia*, 394 Fed App'x 935, 939 (3d Cir. 2010) (citing *Clowes v. Allegheny Valley Hosp.*, 991 F.2d 1159, 1161 (3d Cir. 1991)). Alternatively, a constructive discharge might exist when "the employer is aware that the employee has been subjected to a continuous pattern of harassment and the employer does nothing to stop it." *Aman v. Cort Furniture Rental Corp.*, 85 F.2d 1074, 1084-1085 (3d Cir. 1996); *Levendos v. Stern Entertainment, Inc.*, 860 F.2d 1227, 1230 (3d Cir. 1998) ("acts of discrimination in violation of Title VII can make working conditions so intolerable that a reasonable employee would be forced to resign") (quoting *Goss v. Exxon Office Systems, Co.*, 747 F.2d 885, 887 (3d Cir. 1984)).

Martin fails to set forth any facts which support that she was constructively discharged. Additionally, the fact that she attempted to rescind her resignation ten days after submitting it, without any noted change in the workplace conditions, supports the fact that the resignation was voluntary and not because her alleged working conditions (summarized at ECF #1, ¶44) were unbearable. (ECF #1, ¶52). *See Judge v. Shikellamy School District*, 905 F.3d 122 (3d Cir. 2018) (no constructive discharge where resignation was voluntary). Therefore, based upon the averments in the Complaint, any claim of constructive discharge should be dismissed.

## VI. CONCLUSION

For the reasons stated herein, the Steelton Borough Defendants request that this Court grant their Motion to Partially Dismiss Plaintiff's Complaint as more fully set forth in the proposed Order.

Respectfully submitted,

**SIANA LAW**

Date: January 2, 2026 By: ______________________________

Andrew M. Rongaus, Esquire, I.D. #87423
Demetrios S. Mikelis, Esquire, I.D. #331964
Attorneys for Steelton Borough Defendants
941 Pottstown Pike, Suite 200
Chester Springs, PA 19425
(P): 610.321.5500 (F): 610.321.0505
amrongaus@sianalaw.com
dsmikelis@sianalaw.com

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DORY A. MARTIN, | : | |
| Plaintiff, | : | No. 1:25-CV-02044-YK |
| v. | : | JURY TRIAL DEMANDED |
| BOROUGH OF STEELTON, et al., | : | |
| Defendants. | : | |

**CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that on this day a true and correct copy of the Memorandum of Law in Support of their Motion to Partially Dismiss Plaintiff's Complaint Pursuant to F.R.C.P. 12(b)(6) was served upon the following via ECF:

Bradford Dorrance, Esquire
Keefer, Wood, Allen & Rahal LLP
417 Walnut Street, 3rd Floor
Harrisburg, PA 17101

Michael McAuliffe Miller, Esquire
Renee Mattai Montgomery, Esquire
Theresa Davis, Esquire
Eckert, Seamans, Cherin & Mellot, LLC
213 Market Street, 8th Floor
Harrisburg, PA 17101

**SIANA LAW**

Date: January 2, 2026 By: ______________________

Andrew M. Rongaus, Esquire, I.D. #87423
Demetrios S. Mikelis, Esquire, I.D. #331964
Attorneys for Steelton Borough Defendants
941 Pottstown Pike, Suite 200
Chester Springs, PA 19425
(P): 610.321.5500 (F): 610.321.0505
amrongaus@sianalaw.com
dsmikelis@sianalaw.com