**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DORY A. MARTIN, | : | No. 1:25cv2044 |
| Plaintiff | : | |
| | : | (Judge Munley) |
| | : | |
| v. | : | |
| | : | |
| BOROUGH OF STEELTON; | : | |
| BOROUGH OF STEELTON | : | |
| COUNCIL; WILLIAM SHAUB, | : | |
| Chief, Borough of Steelton Police | : | |
| Department; and CIERA | : | |
| DENT, Mayor, Borough of Steelton | : | |
| Police Department, | : | |
| Defendants | : | |

**MEMORANDUM**

Plaintiff Dory A. Martin is a former police officer for the Borough of Steelton

Police Department.  She pursues gender and disability discrimination claims

against her former employer, the Borough of Steelton ("Steelton Borough")

pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e

*et seq.*, the Americans with Disabilities Act ("ADA") 42 U.S.C. § 12101 *et seq.*

and the Pennsylvania Human Relations Act ("PHRA") 43 PA. STAT. §§ 951 *et*

*seq.*  Also named as defendants in this action are Steelton Borough Council,

Mayor Ciera Dent, and Chief of Police William Shaub.  Plaintiff claims that the

defendants discriminated and retaliated against her after she suffered injuries

from a police dog, or K-9 officer, named Beny.  Defendants counter Martin's

allegations with a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the motion will be granted in part and denied in part.

**Background**

Steelton Borough borders Harrisburg to the south along the Susquehanna River. Martin worked as a patrol officer in Steelton before being promoted to a full time detective in 2018.[1] (Doc. 1, Compl., ¶ 20).

On June 20, 2022, Martin was at the department's gun range with her service weapon for the department's yearly qualifications. (Id. ¶ 24). Martin indicates that she was actively shooting when Beny attacked her. (Doc. 1-5, Pl. Ex. P-3, Pl. Email 08/28/2022). The attack resulted in puncture wounds, abrasions, contusions, and an ulnar nerve injury to her left arm. (Id. ¶¶ 25, 29). Martin further alleges that she suffers from: (1) post traumatic stress disorder ("PTSD") and panic attacks triggered by gunshots, fireworks, and barking dogs; (2) nightmares and intrusive memories related to the attack; and (3)

---

[1] These background facts are derived from plaintiff's complaint and the exhibits attached thereto. At this stage of the proceedings, the court must accept all factual allegations as true. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citations omitted). The court makes no determination, however, as to the ultimate veracity of these assertions.

hypervigilance and conscious avoidance of experiences related to her work as a police officer. (Id. ¶¶ 23, 30).

Per Martin, the attack occurred because Beny's K-9 handler, Officer Scott Schaeffer, failed to comply with the departments standard operating procedures regarding K-9s. (Doc. 1, Compl., ¶¶ 26–27). Specifically, plaintiff avers that the officer did not have the K-9 leashed or muzzled and was not carrying the remote control for the K-9's electronic collar. (Id. ¶ 26).

Following the attack, Martin received medical treatment and mental health counseling. (Id. ¶ 31). She alleges that she provided her physician's work excuse to Steelton Borough and requested accommodation and medical leave. (Id. ¶ 32). Her leave was approved by Chief Shaub. (Id.).

On June 22 and 24, 2022, Martin was evaluated by Steelton Borough's workers' compensation panel doctor, who also served as the plaintiff's primary care physician. (Id. ¶ 33). Thereafter, on July 7, 2022, plaintiff's physician approved a work restriction, precluding her from having any contact with Beny or Schaeffer, the K-9 handler. (Id. ¶ 34).

Martin further alleges that Chief Shaub reacted negatively to these restrictions. (Id. ¶ 35). He allegedly became "extremely hostile and irritated." (Id.). According to the plaintiff, Chief Shaub advised her two or three days later

3

that, if the work restrictions remained in place, she would be demoted to a patrol position and placed on a permanent overnight. (Id. ¶¶ 35–36).

Following their conversation, on July 21, 2022, Martin met with her physician and requested that the work restriction be lifted so that she could return to duty as a detective. (Id. ¶ 37).

Five days later, on July 27, 2022, while off-duty, Martin was called to a scene where human remains were discovered. (Id. ¶ 38). Schaeffer was also dispatched to the scene with Beny, along with another officer, Adrienne Monroy, who was on duty at the time of the dog attack one month prior. (Id. ¶ 39). Plaintiff alleges that, despite her authority over the scene as detective and lead officer, Schaeffer and Monroy displayed personal, ongoing hostility, refused to obey her commands, and jeopardized the integrity of the scene. (Id. ¶¶ 40–41).

Less than three weeks later, on August 15, 2022, Chief Shaub allegedly notified plaintiff that she had violated the Steelton Police Department's social media policy. (Id. ¶ 42). According to Martin, this alleged violation carried a potential disciplinary sanction of 5-10 days unpaid suspension. (Id.).

Martin alleges that, due to Steelton Borough's failure to accommodate, the hostile working environment she experienced, and ongoing retaliation, she was presented with no reasonable alternative but to resign. (Id. ¶¶ 43–44). Martin

4

submitted a letter of resignation on August 18, 2022 with an effective date of October 18, 2022.

Based on the letter, Martin would remain on the force for another 60 days. Martin's complaint alleges that this period was not without issue. On August 19, 2022, Chief Shaub sent a letter accepting Martin's resignation. (Id. ¶ 45). In that same letter, Chief Shaub stated that plaintiff's union representative had agreed that plaintiff would serve an eight (8) day unpaid suspension. (Id. ¶ 47). Per plaintiff, this was false. (Id.). Three days later, plaintiff's union representative contacted Chief Shaub and advised that the union had not agreed to the suspension but instead had requested a mitigation and stay of the suspension. (Id. ¶ 51; Doc. 1-4, Pl. Ex. 3, M. Andreozzi Email 08/22/2022). Plaintiff further contends that, while she was on medical leave from August 20-30, 2022, Chief Shaub removed her training certificates from her desk and refused to return them. (Doc. 1, Compl. ¶¶ 48–49).

On August 28, 2022, Martin alleges that she rescinded her resignation and requested placement on Heart and Lung benefits due to her struggles with PTSD

and panic attacks.[2] (Id. ¶¶ 52–54). Additionally, plaintiff sought a hearing regarding the suspension. (Id. ¶ 55).

Chief Shaub responded by letter on August 30, 2022, informing Martin that Steelton Borough would not accept the recission of her resignation. (Id. ¶ 56). In the same letter, Chief Shaub allegedly denied plaintiff's request for Heart and Lung benefits, indicating that she had not provided any medical documentation substantiating her PTSD and panic attacks. (Id. ¶ 57). According to the plaintiff, this was also a false statement. (Id.). Per plaintiff, Chief Shaub came to her home with the letter and took her gun, badge, and police vehicle keys and placed her on administrative leave until September 19, 2022. (Id. ¶ 59).

Martin further alleges that, on September 20, 2022, Chief Shaub sent her a letter stating that the Steelton Borough Council had ratified her resignation, and that her last day of employment would be October 18, 2022. (Id. ¶ 59). Between August 30, 2022 and October 18, 2022, plaintiff alleges that she was placed on involuntary sick leave and administrative leave. (Id. ¶¶ 58, 72). Plaintiff also alleges that defendants refused to compensate her for her accrued sick leave. (Id. ¶ 73).

---

[2] Heart and Lung benefits refer to workers compensation benefits available to law enforcement officers, 53 PA. STAT. § 637.

6

Finally, plaintiff alleges that similarly situated male officers were treated more favorably in personnel matters, including discipline arising from violations of the Steelton Borough Police Department social media policy. (Id. ¶¶ 50, 110). According to plaintiff, defendants treated her less favorably than comparable male officers with respect to compensation, terms, conditions and employment privileges, including the payment of accrued sick leave. (Id. ¶¶ 108–09).

Plaintiff filed her complaint on October 29, 2025.  Based on the foregoing allegations, plaintiff advances the following causes of action against the Borough of Steelton:

- Count I: ADA – disability discrimination and refusal to accommodate (Id. ¶¶ 84–96);

- Count II: ADA – disability retaliation, (Id. ¶¶ 97–104);

- Count II: Title VII – gender discrimination, (Id. ¶¶ 105–116);

- Count IV: PHRA – disability discrimination, refusal to accommodate, and retaliation, (Id. ¶¶ 117–24);

- Count V: PHRA – gender discrimination, (Id. ¶¶ 125–32);

Defendants responded to plaintiff's allegations with a Rule 12(b)(6) motion to dismiss.  Having been fully briefed, the motion is ripe for disposition.

**Jurisdiction**

Because many of plaintiff's claims arise under federal law, i.e., the ADA and Title VII, the court has jurisdiction pursuant to 28 U.S.C. § 1331. ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). The court has supplemental jurisdiction over plaintiff's PHRA claims pursuant to 28 U.S.C. § 1367(a). ("In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").

**Standard of Review**

Defendants have filed a motion to dismiss for failure to state a claim upon which relief can be granted. The court tests the sufficiency of the complaint's allegations when considering a Rule 12(b)(6) motion.

To survive a motion to dismiss, "a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Doe v. Princeton Univ., 30 F.4th 335, 341–42 (3d Cir. 2022) (quoting FED. R. CIV P. 8(a)(2)). That means, a complaint must contain sufficient factual matter, accepted

8

as true, to state a claim to relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when factual content is pled that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 570, 127 S.Ct. 1955). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555).

On a motion to dismiss for failure to state a claim, district courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief. See Phillips, 515 F.3d at 233 (citations omitted).

**Analysis**

### 1. Plaintiff's Gender Discrimination Claims

Defendants move to dismiss Martin's Title VII and PHRA gender discrimination claims.  To state a *prima facie* case of sex discrimination, plaintiff must demonstrate that she: (1) is a member of a protected class; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) that

9

the action occurred under circumstances that could give rise to an inference of intentional discrimination. See Mandel v. M & Q Packaging Corp., 706 F.3d 157, 169 (3d Cir. 2013) (citing Makky v. Chertoff, 541 F.3d 205, 214 (3d Cir. 2008)). At the motion to dismiss stage, a plaintiff need not establish a prima facie claim, only enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements. Connelly v. Lane Const. Corp., 809 F.3d 780, 789 (3d Cir. 2016).

Defendants contend that plaintiff has not stated any valid comparator, i.e., any person who received more favorable treatment or allege the circumstances under which the more favorable treatment occurred. (Doc. 21, Def. Br. in Supp. at 9). Martin argues in her opposition brief that she has stated a claim and that discovery is required to determine which individuals are relevant male comparators and the specific circumstances of those male comparators' alleged "more favorable treatment." (Doc. 27 at 6). The court agrees with the plaintiff.

Under the law, "comparator employees need not be identical but must be similarly situated in 'all material respects.'" Qing Qin v. Vertex, Inc., 100 F.4th 458, 474 (3d Cir. 2024). "Factors that are relevant include whether the employees dealt with the same supervisor, were subject to the same standards, and shared similar job responsibilities." Id. (citations omitted). "An employee who

10

holds a different job title or works in a different department is not similarly situated." Id. A determination into whether an individual might qualify as a valid comparator "requires a court to undertake a fact–intensive inquiry on a case–by–case basis rather than in a mechanistic and inflexible manner." Monaco v. Am. Gen. Assur. Co., 359 F.3d 296, 305 (3d Cir. 2004) (citing Pivirotto v. Innovative Sys., 191 F.3d 344, 357 (3d Cir. 1999)).

Martin's complaint alleges that male officers were treated more favorably in personnel matters, including with respect to Steelton Borough Police Department social media policy. (Id. ¶¶ 50, 110). Plaintiff alleges that she was treated less favorably than similarly situated male comparators in compensation, terms, conditions and/or privileges of employment, including payment of accumulated sick time. (Id. ¶¶ 108–09). The court can also reasonably infer from the allegations that Martin was treated differently than the male K-9 handler, Officer Schaeffer, based on plaintiff's allegations that he violated department protocol with respect to Beny and challenged the plaintiff's authority as lead officer at a crime scene. (Id. ¶¶ 26–28, 38–41). Any discipline Schaeffer received or did not receive would be relevant to any gender discrimination claim as would other information about whether this male officer is a valid comparator under the law.

11

To the extent that defendants demand a higher level of factual detail at this stage, Martin also faces several issues pre–suit, which she addressed in her opposition brief. Department personnel matters are generally kept confidential. Only discovery will reveal whether plaintiff can validate her gender discrimination claims with comparator evidence.

However, at this stage, Martin has offered enough to clear the "low bar for establishing a *prima facie* case of employment discrimination." See Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ., 470 F.3d 535, 539 (3d Cir. 2006) (citation omitted). Consequently, the defendant's motion to dismiss plaintiff's gender discrimination claims will be denied.

## 2. Plaintiff's Disability Discrimination Claims

Martin's complaint also raises claims under the ADA and PHRA for disability discrimination, retaliation, and failure to accommodate.[3] In challenging plaintiff's failure to accommodate claims, defendants argue that plaintiff,

---

[3] Counts I, II and IV of plaintiffs complaint assert ADA and PHRA claims using the same legal theories. The court will address plaintiffs ADA and PHRA claims collectively under the same legal standard. See Morgan v. Allison Crane & Rigging LLC, 114 F.4th 214, 220, n. 21 (3d Cir. 2024) ("federal courts should continue to interpret the PHRA in harmony with the ADA,"); Colwell v. Rite Aid Corp., 602 F.3d 495, 500, n. 2 (3d Cir. 2010) ("[T]he same legal standard that applies to the ADA applies equally to disability discrimination claims under the PHRA.").

according to her own allegations, was accommodated when she requested same.

Under the law, a plaintiff bringing an ADA failure–to–accommodate claim must aver: (1) she was disabled; (2) her employer knew it; (3) she requested accommodations or assistance; (4) her employer did not make a good faith effort to assist; and (5) she could have been reasonably accommodated. See Capps v. Mondelez Glob., LLC, 847 F.3d 144, 157 (3d Cir. 2017) (citing 29 C.F.R. § 825.702(c)(2)).

Aside from the granted accommodations, Martin advances that the defendants failed to accommodate her in the following ways: (1) in response to plaintiff's requested accommodation to be restricted from contact with the K–9 and officer who were the subjects of the attack, Chief Shaub allegedly informed plaintiff she would be demoted to a patrol position on a permanent night shift (Id. ¶¶ 34–36); and (2) Chief Shaub's denial of her Heart and Lung benefits while out on medical leave from August 20–30, 2022. (Id. ¶¶ 54, 57). Plaintiff has plausibly alleged that the threatened demotion and reassignment of plaintiff to a night shift position was not a good faith effort to accommodate her. Whether or not these requests could have been reasonably accommodated is not easily understood absent discovery. Defendants' motion will thus be denied.

13

### 3. Plaintiff's Constructive Discharge Claims

Defendants also argue that Martin's allegations are insufficient to advance a constructive discharge theory with respect to her discrimination claims. Constructive discharge equates to an employee's reasonable decision to resign because of unendurable working conditions and "is assimilated to formal discharge for remedial purposes." Pennsylvania State Police v. Suders, 542 U.S. 129, 141 (2004). The inquiry into constructive discharge is objective: "whether the conduct complained of would have the foreseeable result that working conditions would be so unpleasant or difficult that a reasonable person in the employee's shoes would resign." Clowes v. Allegheny Valley Hosp., 991 F.2d 1159, 1161 (3d Cir. 1993) (citations omitted and internal quotation marks removed). Factors relevant to this issue are whether the employer: "(1) threatened the employee with discharge or urged or suggested that she resign or retire, (2) demoted her, (3) reduced her pay or benefits, (4) involuntarily transferred her to a less desirable position, (5) altered her job responsibilities, or (6) gave unsatisfactory job evaluations." Colwell v. Rite Aid Corp., 602 F.3d 495, 503 (3d Cir. 2010) (citing Clowes, 991 F.2d at 1161) (internal quotation marks and brackets removed). The absence of these factors is not necessarily dispositive. Duffy v. Paper Magic Grp., Inc., 265 F.3d 163, 168 (3d Cir. 2001).

14

"[T]he law[,]" however, "does not permit an employee's subjective perceptions to govern a claim of constructive discharge." Clowes, 991 F.2d at 1162 (quoting Gray v. York Newspapers, Inc., 957 F.2d 1070, 1079 (3d Cir.1992) (further citation omitted).

Defendants argue that plaintiff has not set forth any facts which support her theory of constructive discharge. In arguing for dismissal, defendants focus on plaintiff's letter of resignation, which does not note any specific reason for her resignation, as proof that conditions were not unbearable. Understanding that the factual record is not developed, defendant's argument is ultimately not persuasive. See Stremple v. Nicholson, 289 F. App'x 571, 574 (3d Cir. 2008) (citing Levendos v. Stern Entm't, Inc., 860 F.2d 1227, 1230 (3d Cir. 1988) ("Constructive discharge is a heavily fact–driven determination.").

First, an employee filing an employment discrimination lawsuit may only be able to aver facial expressions, body language, and their intuition to support allegations before any substantive discovery occurs. (See Doc. 1, Compl. ¶¶ 35–36, 40–42, 45–47, 49, 57–59, 72–73). Second, plaintiff's amended complaint pleads both her subjective perceptions of defendant's conduct, and facts supporting an objective evaluation of her circumstances under a reasonable person standard. For example, plaintiff alleges that Chief Shaub became hostile

15

and irritated when presented with plaintiff's July 7, 2022 request for accommodation. (Id. ¶ 35). This response led plaintiff to request the accommodation be lifted in order to return to her work position on June 21, 2022. (Id. ¶ 37). Plaintiff also alleges that she faced retaliation while on accommodated medical leave when Chief Shaub removed training certificates from her desk and refused to return them. (Id. ¶ 49).  Additionally, Chief Shaub allegedly showed up to the plaintiff's house to take her gun, badge, and police keys just days after Martin rescinded her resignation letter and was placed on administrative leave. (Id. ¶¶ 52–58).  Accordingly, plaintiff's constructive discharge allegations are plausible on the facts alleged, and the motion to dismiss will be denied.

### 4. Plaintiff's Claims Against Steelton Borough Council, Individual Borough Council Members, and Mayor Dent

Finally, defendants seek to dismiss certain named parties to this action, i.e., Steelton Borough Council, the individual council members identified in the body of Martin's complaint, and Mayor Dent.

### a. Members of Steelton Borough Council

Defendants seek to dismiss Martin's claims against the individual members of the Steelton Borough Council as redundant or improper defendants.  Plaintiff does not contest dismissal, indicating that these individuals are not parties to this litigation. (Doc. 27, Pl. Br. in Opp. at 3 n.2).  The court notes that the individual

16

members of Steelton Borough Council are not named as defendants in the caption of the complaint but are listed as parties on the docket. To avoid any confusion over the issue, defendants' motion will be granted as unopposed and the Clerk of Court will be directed to terminate the individual members of Steelton Borough Council as defendants on the docket.

### b. Steelton Borough Council

Defendants also seek to dismiss the claims against Steelton Borough Council as a redundant defendant. Defendants argue that any liability that attaches to the Steelton Borough Council will ultimately be borne by Steelton Borough. Martin opposes. The parties cite district court cases supporting their divergent positions. Defendants rely on, among other cases, Satterfield v. Borough of Schuykill Haven, 12 F. Supp.2d 421, 431 (E.D. Pa. 1998). Plaintiff relies on, among other cases, Giles v. Dunmore Borough Council, 1997 U.S. Dist. LEXIS 3322 (M.D. Pa. Mar. 18, 1997).

On one hand, the Pennsylvania Borough Code vests the power to appoint and remove police officers with borough council. 8 PA. CONS. STAT. § 1121(a)(1), (2). And as Martin alleges, the Steelton Borough Council voted to accept her resignation after she rescinded it. On the other hand, under the Federal Rules of Civil Procedure, a party has the capacity to be sued based on the law of the state

where the court is located. FED. R. CIV. P. 17(b)(3).  The Pennsylvania Rules of Civil Procedure provide that "[a]n action shall be brought by or against a political subdivision in its name." PA. R. CIV. P. 2102(b).  "Political subdivision" is defined in the Pennsylvania Rules as, "any county, city, borough, incorporated town, township, school district, vocational school district, county institution district or municipal or other local authority[.]" PA. R. CIV. P. 76.  ,

After considering the two options, the court will dismiss Steelton Borough Council from this action based on Steelton Borough being named as a defendant.  While there is no further authority from the state courts given the federal claims involved, a number of federal courts in this state have followed the rationale in Satterfield: when both a borough and borough council are sued, one is a redundant party. See Zomerfeld v. Boro, No. 3:22–CV–00971, 2023 WL 2985148, at *3 (M.D. Pa. Feb. 6, 2023), report and recommendation adopted, No. CV 3:22–971, 2023 WL 2369897 (M.D. Pa. Mar. 6, 2023); Keslosky v. Borough of Old Forge, No. 3:08CV1240, 2009 WL 2843326, at *6 (M.D. Pa. Aug. 31, 2009) (Title VII and PHRA claims); Spradlin v. Borough of Danville, No. 4:CV 02 2237, 2005 WL 3320788, at *1 (M.D. Pa. Dec. 7, 2005), aff'd, 188 F. App'x 149 (3d Cir. 2006); Copenhaver v. Borough of Bernville, No. CIV.A. 02–8398, 2003 WL 26616224, at *5 (E.D. Pa. Jan. 10, 2003).  Defendants' motion to

18

dismiss will be granted.  However, the dismissal in no way prejudices the right of the plaintiff to pursue her claims against Steelton Borough based upon the alleged misconduct of the Steelton Borough Council. <u>Satterfield</u>, 12 F. Supp. 2d at 431.

### c. Mayor Dent

Defendants also assert that Mayor Dent should be dismissed from this litigation. Defendants argue that no non–conclusory factual claims are raised regarding Mayor Dent, and that, for this reason, any claims against Mayor Dent must be dismissed.  Notably, Mayor Dent does not appear in any allegation as interacting with Martin, either directly or through Chief Shaub.  Mayor Dent is not mentioned until Paragraph 44 of plaintiff's complaint.  Even then, the complaint provides a blanket assertion that plaintiff was left with no choice but to resign due to: "Chief Shaub/Mayor Dent's refusal to accommodate her work restrictions and disabilities[.]" (Doc. 1, ¶ 44). A closer review reflects that plaintiff attributes discriminatory and retaliatory conduct and other purported wrongdoing to "Chief Shaub and/or Mayor Dent". (<u>Id.</u> ¶¶ 66–67, 70, 75, 80, 83, 84–85).

Subchapter E of the Pennsylvania Borough Code sets forth the methods by which a borough may organize and govern its police force. 8 PA. CONS. STAT. §

19

1121. In pertinent part, if a borough establishes a police force, certain provisions apply to its governance—specifically:

> (1) [the] [c]ouncil may appoint police officers. . .; (2) [the] [c]ouncil may remove, suspend or reduce in rank any police officer. . .; (3) [the] [c]ouncil shall designate the ranks in the police department and the duties of each rank and may designate one of the police officers as chief of police. . ..

8 PA. CONS. STAT. § 1121(a).

A separate statute gives a mayor authority and control over the chief of police and the police force. 8 PA. CONS. STAT. § 1123.1(a). However, under the Borough Code, a mayor is permitted to delegate supervision of subordinate officers to the chief of police. 8 PA. CONS. STAT. §1123.1(c). A mayor may also delegate to the chief of police the authority to instruct subordinate officers in how to perform their duties. Id.

The Pennsylvania Commonwealth Court has tackled the meaning of the Borough Code's provisions on who controls the police department. "A mayor's ability to exercise full charge and control of the chief of police and the police force is not without the assistance and cooperation of the borough council." Hoffman v. Borough of Macungie, 63 A.3d 461, 469 (Pa. Commw. Ct. 2013). According to the Commonwealth Court, "a borough council may organize a police force, but the mayor controls its day–to–day operations". Id. Consequently, while "it may

20

be pragmatic for [a mayor] to delegate some of his authority to the chief of police, or any other officer, it is [her] privilege to retain such authority. Id. at 470.

Taking all of Martin's allegations as true, the most favorable reading indicates that Mayor Dent may have delegated disciplinary authority and personnel decisions to Chief Shaub, but also may have retained authority. Mayor Dent's level of involvement in the alleged adverse actions cannot be fully known absent discovery. Thus, the motion to dismiss will be denied with respect to Mayor Dent.

**Conclusion**

For the reasons set forth above, defendants' motion to dismiss will be granted in part and denied in part. The motion is granted with respect to Steelton Borough Council and the individual members of Steelton Borough Council. The motion to dismiss is otherwise denied. An appropriate order follows.

Date: 7/21/26

JUDGE JULIA K. MUNLEY
United States District Court

21